**UNITED STATES DISTRICT COURT**
**NORTHEN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MARK HERNDON,** : | |
| Plaintiff, : | |
| : | **Civil Action No.** |
| v. : | 1:21-CV-04845-JPB-CCB |
| : | |
| **GOLDEN KEY INTERNATIONAL** : | |
| **HONOUR SOCIETY,** : | |
| : | |
| Defendant : | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Mark Herndon, ("Herndon" or "Plaintiff"), by and through his undersigned counsel, respectfully files this Complaint under Title VII of the Civil Rights Act of 1964, (Title VII) action against Golden Key International Honour Society ("Golden Key") alleging gender (male) and age discrimination against Plaintiff.

## JURISDICTION AND VENUE

1.

Mark Herndon is and has been at all times relevant to this matter a resident of Perth, Australia and is dual citizen of both the United States and Australia. At the time of his employment with Golden Key, he was only a citizen of the United States.

He was employed by Golden Key through its Atlanta Headquarters office, but fulfilled the duties of his position in Perth, Australia.

2.

Defendant Golden Key International Honour Society is a Georgia Professional Corporation, a citizen of the State of Georgia and has its principal office at 4470 Chamblee Dunwoody Road, 304, Dunwoody, Georgia 30338. Its Registered Agent is Derrick Brown, 4470 Chamblee Dunwoody Road, 304, Dunwoody, Georgia 30338.

3.

The jurisdiction of this Court is invoked pursuant to its federal question jurisdiction provisions contained in 28 U.S.C. § 1331 and the jurisdictional provisions set forth in 42 USC Sec. 20002-5, which are incorporated by reference into the ADEA, and the gender discrimination provisions of Title VII of the Civil Rights Act of 1964.

4.

Venue is proper in this action because the unlawful employment practices occurred, among other places, in this district and division.

5.

On September 8, 2021, the District Director of the Equal Employment Opportunity Commission in Atlanta, Georgia issued to Plaintiff the Notice of Suit Rights which provided that a lawsuit could be filed against Defendant within ninety (90) days of its issuance.  This lawsuit is being filed on a timely basis.

## GENERAL ALLEGATIONS

6.

Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 5.

7.

Mr. Herndon joined Golden Key while a student at the University of Tennessee, Knoxville in 1984 and joined the Golden Key headquarters staff in Atlanta in 1987. He initially worked for Golden Key in several increasing roles until 2002.

8.

During this tenure between 1987 to 2002, Mark was responsible for expanding Golden Key partnerships across the US, and therefore significant, ongoing annual revenue generation which continues to the present time. In addition, Mark also developed corporate partnerships which resulted in millions of dollars of revenue to

Golden Key. Importantly, from 1992 to 2002 Mark was responsible for all international expansion and revenue generation. Due to Mark's work and capacity to build partnerships both in the United States and internationally, Golden Key has received more than $25 million in revenue between 1987 to present.

9.

In addition to his responsibilities in the United States, Mark was responsible for the internationalization of Golden Key resulting in the expansion to Australia, Canada, Malaysia, New Zealand, South Africa and United Kingdom. Mark was personally responsible for developing nearly 100 of the approximate 400 university partnerships with Golden Key in the US and globally, and coached other staff in the process to establish additional university partnerships. In total, Mark accounted for approximately 175 university partnerships.

10.

In 2002 Mark was recruited by the president of Macquarie University in Sydney, Australia to join her team as the founding Director of the Alumni Relations Office based on her experiences working with Mark to internationalize Golden Key while she served on the Golden Key Board of Directors. Mark then was recruited by Oxford University UK to become the Head of Development - International and worked for the University on a three-year contract 2008-2011.

4

Mark returned to Australia in 2012 to maintain his permanent residency status with a senior role at Curtin University in Perth, WA as Director of Advancement.

11.

In Spring 2016, the former CEO/Executive Director of Golden Key, and founding member and board member, Brad Rainey, invited Mark to return to Golden Key as the Vice President - International after consultation with key stakeholders to reverse the decline of university support for chapters which had consistently occurred in the previous decade. Mark accepted the role as he was passionate about securing support from university executives to endorse Golden Key on their respective campuses. The aforementioned positions and areas of responsibility enabled Mark to further develop a global network of university executives in support of Golden Key. Mark's ability to develop supporters among senior university executives was unparalleled by any other Golden Key employee. Mark was an asset, and he empowered his global network to support Golden Key.

12.

Mr. Herndon also played a key role in developing students' graduate attributes of communication, leadership and teamwork and the contributions students make to society through service in their respective communities. Not only did Mark meet

with students and university executives on campuses around the world, he also led on the delivery of the annual Asia Pacific Leadership Summit including theme, content and speakers. And of course, he expanded or renewed Golden Key partnerships, particularly in Canada, Australia, New Zealand, Hong Kong and Malaysia.

13.

Between 2016 and his termination in April 2020, Mr. Herndon was highly successful with renewing university/Golden Key partnerships, saving partnerships, or establishing partnerships, with universities in the countries above and a significant revenue generation for the Society. All these activities are documented in quarterly board reports Mr. Herndon submitted to the Golden Key Board of Directors while Brad Rainey served as the CEO/Executive Director. In contrast, and based on information and belief, when Melissa Leitzell was appointed CEO by the Board of Directors, she did not submit Mr. Herndon's reports to the Board which she in fact had requested him to submit.

14.

While Ms. Leitzell was a co-Vice President with Mr. Herndon, she was instrumental in ousting Brad Rainey, a male about 60 years old, from his CEO position in 2018/early 2019 in collusion with the former Chair of the Board of

Directors. She was then appointed as CEO by the Board without a transparent or competitive selection process even though the Board and Golden Key communicated with all Golden Key stakeholders and members globally that they had conducted a thorough search to make the appointment. Once Ms. Leitzell was appointed as CEO and immediately thereafter, she quickly created a difficult and hostile environment for Mr. Herndon based on his age and gender.

15.

For example, Ms. Leitzell intentionally withheld operational information which Mr. Herndon should have been privy to as the VP from March 2019 until Mr. Herndon was dismissed on 16 April 2020. The withholding of this operational information was detrimental to Mr. Herndon being able to fully perform his duties. Based on information and belief, and in an effort to minimize Mr. Herndon's work at Golden Key, Ms. Leitzell did not submit Mr. Herndon's Board reports to the Board of Directors,. She failed to submit this report based on her animosity toward Herndon because of his age and gender. By way of further example, Leitzell intentionally mislead Herndon by telling him she was in Brisbane for a Golden Key summit meeting when she was actually in Sydney, an office over which Herndon served as the acting director.

When Ms. Leitzell spoke with Mr. Herndon on 16 April 2020 regarding his termination, together with the CFO, Mr. Herndon was fired based on a 'restructuring," but "restructuring" was a cover up for a termination based on his age and gender because:

- he was creating relationships and opening new chapters for Golden Key, and saving university partnerships, which were generating significant revenue for Golden Key;

- the revenue he brought into Golden Key substantially exceeded his cost;

- that his work was enhancing the name and brand of Golden Key;

- he was managing the activities of the Asia Pacific office as the *de facto* Director, including the annual Asia Pacific Summit, without additional cost to Golden Key.

- May 2020 International Leadership Council minutes indicate that Melissa Leitzell wanted to hire additional staff members to do the work Mr. Herndon was already doing.

- The work that Mr. Herndon was doing prior to his termination is now being done by substantially younger female employees.

16.

When Mr. Herndon asked her to explain why his role was being made redundant, she only said, "your position wasn't working for me"; "**I** want a director

in Sydney"; and that his termination "was not COVID-related." When Mr. Herndon asked for specifics, she stated that as the CEO and Leader, she didn't have to respond since her decision could not be challenged. Mr. Herndon reminded Ms. Leitzell that she never asked him to relocate to Sydney, which he would have been willing to do since he had previously lived in Sydney.

17.

The fact was that Mr. Herndon was raising revenue by saving or establishing new partnerships in Australia, Canada and New Zealand, setting up Golden Key in Hong Kong for the first time where the Open University of Hong Kong was paying for the relationship, renewing Golden Key in Malaysia, and leading on the development and implementation of the annual Asia Pacific Leadership Summit, etc., his termination was flatly contrary to legitimate business reasons. Herndon was unquestionably qualified to perform the duties of his position.

18.

Ms. Leitzell has had a history of antagonistic actions against older Golden Key employees and with male employees.

19.

At the time of Mr. Herndon's termination, there were approximately 27 employees working for Golden Key. Mr. Herndon, who is 58 years old, was

terminated in April 2020. The other older employee who was terminated, Brad Rainey, was also impacted by Ms. Leitzell and her actions with the Board; he is male, and over 60. Based on information and belief, there are only four males currently working for Golden Key in Atlanta. Based on further information and belief, all the staff in the Asia Pacific office and the South African office are female. Herndon was treated worse than other similarly situated employees who were younger or female, or both.

20.

In employment termination cases, the plaintiff's *prima facie* burden is usually described as requires a showing that (1) the employee belongs to a protected class, (2) the employee was subjected to an adverse employment action, (3) the employee was qualified to perform his/her job, and (4) the employer treated similarly situated employees outside the plaintiff's protected class more favorably.

21.

Further, the evidence of age and sex discrimination in this matter creates a convincing mosaic of discriminatory intent. *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (citations omitted). Here, but for Herndon's age and gender, Herndon submits that the facts and evidence demonstrate that he would not have been terminated by Leitzell and Golden Key.

## COUNT I

**(Discrimination Under the ADEA)**

22.

Plaintiff incorporates paragraphs 1-21 above as if stated herein.

23.

Herndon was performing well, was qualified for his position and was terminated in an alleged "reorganization, " a reorganizaotin in which he was the only employee terminated. Herndon was fifty eight (58) years old at the time of his termination.

24.

At the time of his termination, Herndon was qualified to work in his position as Vice President-International and in fact, was performing well in addition to taking on the duties of the Director of the Asia Pacific office. More than 30 Golden Key advocates and supporters have submitted testimonials in support of Mark Herndon's impact and contributions to Golden Key.

25.

Herndon's termination by Golden Key constituted an adverse employment action.

26.

Although Herndon's position was eliminated for discriminatory reasons, his duties remained and are being performed by younger employees outside the protected age category of forty (40) years old or older, and further, similarly situated younger employees were retained by Golden Key. These similarly situated employees were treated better than Plaintiff based on their age.

27.

Further, Plaintiff's termination as part of a reorganization or a reduction in force was a pretext for age discrimination: Plaintiff was the only person terminated in the "reorganization" and was targeted by Golden Key because of his age. Herndon was the oldest employee at Golden Key at the time. Mr. Herndon's activities also generated substantial revenue for Golden Key as its Vice President-International while also performing the duties of the Director of Asia Pacific without remuneration.

28.

Based on information and belief, Golden Key violated its internal policies regarding termination of Herndon, a vice president, by not having full Board of Director's approval for his termination. In short, the explanation of the reason for the "reorganization" as a pretext for discrimination.

29.

Golden Key's decision to terminate Mark Herndon through an alleged reduction in force or reorganization was a willful and intentional violation of the ADEA, thus entitling Herndon to liquidated damages.

## COUNT II

**(Violation of the Sex Discrimination Provisions under Title VII.)**

30.

Plaintiff incorporates paragraphs 1-21 as if stated herein.

31.

Herndon was performing his job duties well and was terminated in a pretextual "reorganization."

32.

At the time of his termination, Herndon was qualified to work in his position as Vice President-International and in fact, was performing well.

33.

Herndon's termination by Golden Key constituted an adverse employment action.

34.

Although Herndon's position was eliminated, based on information and belief, his duties remained and were therafter performed by substantially less qualified female employees.

35.

Female employees similarly situated with Herndon but less qualified were retained by Golden Key.

36.

Golden Key's articulated reason for Plaintiff's termination, that the expense of Plaintiff's position in Perth, Australia, was greater than the revenue that his position brought in, was false and pretextual. That pretextual reason demonstrates both age and sexual discrimination by Golden Key.

37.

The substantial motivating reason for the termination of Herndon was his gender.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff Mark Herndon prays for the following relief in this matter:

a.  That Herndon be awarded all relief available under the ADEA, including backpay, reinstatement or alternatively front pay, liquidated damages and costs of this matter, expenses of litigation and attorneys' fees.

b.  That Herndon be awarded all relief available under the Title VII, including backpay, reinstatement or alternatively front pay, compensatory and punitive damages, costs of this matter, expenses of litigation and attorneys' fees.

c.  That Herndon be granted a trial by jury as to all issues;

d.  That Herndon be granted injunctive and declaratory relief as appropriate; and

e.  That the Court grant Herndon any and all other relief to which he may be entitled.

This 24th day of November 2021.

Respectfully submitted,

By: /s/ Gary R. Kessler
Gary R. Kessler
Gary R. Kessler P.C.
Georgia Bar No. 416562
2573 Apple Valley Road NE
Atlanta, Georgia 30319
404-237-1020 (office)
gkessler@martensonlaw.com
ATTORNEY FOR PLAINTIFF